**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| ESTECH SYSTEMS IP, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:21-cv-00473-JRG-RSP |
| | ) | (Lead Case) |
| MITEL NETWORKS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT MITEL NETWORKS, INC.'S
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON INFRINGEMENT</u>**

## TABLE OF CONTENTS

I.    NATURE AND STAGE OF THE PROCEEDINGS ....................................................1

II.   STATEMENT OF THE ISSUES..................................................................................1

III.  STATEMENT OF UNDISPUTED MATERIAL FACTS ...........................................1

IV.   LEGAL STANDARDS ...............................................................................................4

      A.    Summary Judgment Standard ..............................................................................4

      B.    Patent Infringement Standard ..............................................................................5

      C.    Ensnarement Under The Doctrine of Equivalents ................................................5

V.    ARGUMENT ..............................................................................................................7

      A.    Estech Cannot Identify Evidence that Would Permit a Jury to Find
            Infringement of Claim 47[c] of the '684 Patent....................................................8

      B.    Estech Cannot Identify Evidence that Would Permit a Jury to Find
            Infringement of the '699 Patent ..........................................................................15

      C.    Ensnarement Under The Doctrine of Equivalents ..............................................17

VI.   CONCLUSION..........................................................................................................17

i

## I.      NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Estech Systems IP, LLC's ("Estech" or "Plaintiff") filed this case against Defendant Mitel Networks, Inc. ("Mitel" or "Defendant") on December 30, 2021 asserting U.S. Patent Nos. 8,391,298 (the "'298 Patent"), 7,068,684 (the "'684 Patent," attached hereto as Exhibit A), 6,067,349 (the "'349 Patent"), and 7,123,699 (the "'699 Patent," attached hereto as Exhibit B). Between the filing of the Complaint and the instant motion, the '349 Patent and the '298 Patent were invalidated in *inter partes* review proceedings.  *See RingCentral, Inc. v. Estech Systems IP, LLC*, IPR2021-00572, paper 30 (Oct. 4, 2022) ('349 Patent); *RingCentral, Inc. v. Estech Systems IP, LLC*, IPR2021-00574, paper 30 (Oct. 3, 2022) ('298 Patent).  The remaining patents at issue are the '684 Patent and the '699 Patent (collectively, the "Patents-in-Suit" or "Asserted Patents").

## II.     STATEMENT OF THE ISSUES

Whether this Court should grant partial summary judgement of non-infringement of claim 47 of the '684 Patent because no product satisfies claim element 47[c].

Whether this Court should grant summary judgement of non-infringement of the '699 Patent based on Estech's inability to show that any product was used in an infringing configuration.

Whether this Court should grant partial summary judgement of non-infringement under the doctrine of equivalents for claim element 1[i] of the '699 Patent based on Estech's failure to carry its burden to show that its equivalents theory does not ensnare the prior art.

## III.    STATEMENT OF UNDISPUTED MATERIAL FACTS

Claim 47 of the '684 Patent is reproduced below, with element lettering added for ease of reference:

Claim 47: An IP telephony device comprising:

47[a]: an input data port for receiving data, wherein the data is addressed for transmission to a location other than the IP telephony device;

47[b]: circuitry for communicating information to and from the IP telephony device;

47[c]: circuitry for sufficiently throttling the data so that the communication of the information can be performed in real-time, wherein the IP telephony device communicates the information using an IP protocol, wherein the throttling circuitry further comprises circuitry for sending a congestion message from a data output port when the amount of the information being received by the IP telephony device falls below a predetermined level.

(Ex. A at 20:52-65).

Mitel's corporate representative on technical topics, Mr. Rob Chalmers, testified as follows with regard to data prioritization:



(Ex. C (Chalmers Dep. Tr.) at 58:10-59:1).

On April 12, 2023, Estech submitted the "Expert Report of B. Occhiogrosso re Infringement" ("Infringement Report," attached hereto as Ex. D).  Regarding the "congestion message" and "predetermined level" limitations of claim element 47[c], Mr. Occhiogrosso opined as follows:

███████

███████████████████████
███████████████████████
███████████████████████
███████████████████████

(Ex. D (Infringement Report) at Ex. MITEL-684, 71).

In his deposition, Estech's expert agreed that the throttling circuitry recited in claim 47[c] must reside in an IP telephony device.  (Ex. E (Occhiogrosso Dep. Tr. (Rough)) at 29:8-30:20).

Estech has identified no evidence that any circuitry inside any Mitel telephone satisfies the "throttling circuitry" limitation of claim 47[c] of the '684 Patent.

Claim 1 of the '699 Patent is reproduced below, with element lettering added for ease of reference:

Claim 1: In a telecommunications system, a method comprising the steps of:

1[a]: storing a voice mail message in a voice mail box in a voice mail system within a first LAN;

1[b]: coupling a second LAN to the first LAN over a WAN, wherein the first LAN, the second LAN, and the WAN operate under a routable network protocol;

1[c]: providing a sensory indication on a telecommunications device within the second LAN that the voice message is stored in the voice mail box within the first LAN; and

1[d]: the telecommunications device accessing the voice mail system within the first LAN to listen to the voice message stored in the voice mail box,

1[e]: wherein the step of the telecommunications device accessing the voice mail system within the first LAN to listen to the voice message stored in the voice mail box further comprises the steps of:

1[f]: establishing a channel between the first and second LANs over the WAN;

1[g]: coupling an audio path over the channel between the telecommunications device and the voice mail box; and

1[h]: streaming voice data containing the voice message from the voice mail box to the telecommunications device over the audio path, wherein the establishing step further comprises the steps of:

1[i]: in response to an input at the telecommunications device, sending a user mail box connection message from the second LAN to the first LAN requesting a channel, wherein the user mail box connection message includes an extension associated with the telecommunications device and an identification of the voice

mail box;

> 1[j]: assigning the channel by the first LAN; and

> 1[k]: sending a connection established message from the first LAN to the second LAN.

(Ex. B at 12:53-13:21).

In prior litigation, this Court issued the following opinion on August 20, 2021:

Defendants have properly raised their ensnarement defense in their motion for summary judgment and have not prejudiced Estech. *Jang*, F.3d at 1289 ("Dr. Jang was not prejudiced by any lack of pretrial discovery as to ensnarement. The district court ruled that Dr. Jang could proceed with a doctrine of equivalents theory at trial only shortly before it started."). The Court finds it premature to rule on the issue of ensnarement.

(Ex. F, *Estech Systems, Inc. v. Target Corp.*, Case No. 2:20-cv-00123, Dkt. 307 at 18).

## IV.    LEGAL STANDARDS

### A.    Summary Judgment Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex v. Catrett*, 477 U.S. 317, 322 (1986).  Where the movant bears the burden of proof on an issue, the movant must present evidence for each required element of the dispositive issue.  *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991).  The burden then shifts to the non-movant to raise a genuine issue of material fact in order to defeat the motion. *Id.*  However, if the non-movant bears the burden, the movant is entitled to summary judgment by demonstrating that the non-movant failed to proffer sufficient evidence to make a prima facie case. *See Celotex*, 477 U.S. at 323.  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine [dispute] of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  Disputes over irrelevant or

unnecessary facts will not defeat a summary judgment motion; rather, the dispute must include a material fact and be genuine "such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  In ruling on a motion for summary judgment, all facts and evidence must be viewed in the light most favorable to the non-movant.  *Id.* at 255.

### B.    Patent Infringement Standard

Determining whether a product or method literally infringes a patent is a two-step process. *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1319 (Fed. Cir. 2012).  The Court must first determine the proper construction of the asserted claims as a matter of law.  *Id.* Second, the finder of fact must determine whether the asserted claim, as properly construed, "reads" on the product or method.  *Id.*  Thus, "a patentee must supply sufficient evidence to prove that the accused product or process contains . . . every limitation of the properly construed claim." *Eli Lilly & Co. v. Hospira, Inc.*, 933 F.3d 1320, 1328 (Fed. Cir. 2019) (quoting *Seal-Flex, Inc. v. Athletic Track and Court Const.*, 172 F.3d 836, 842 (Fed. Cir. 1999)).

"Summary judgment on the issue of infringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents."  *PC Connector Sols. LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005) (citing *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353–54 (Fed. Cir. 1998)).  To be entitled to summary judgment of noninfringement, the moving party must demonstrate that the facts and inferences, when viewed in the light most favorable to the nonmoving party, would not persuade a reasonable jury to find infringement.  *See Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1370 (Fed. Cir. 2012).

### C.    Ensnarement Under The Doctrine of Equivalents

A patentee can rely on the doctrine of equivalents to prove infringement when the accused

produce does not literally satisfy each limitation.  However, the doctrine of equivalents is the exception, and "not the rule." *Eli Lilly v. Hospira*, 933 F.3d at 1330.  This is because "[p]atent infringement is principally determined by examining whether the accused subject matter falls within the scope of the claims" —i.e., literal infringement.  *Id.*  Courts have "placed important limitations on a patentee's ability to assert infringement under the doctrine of equivalents" which, in effect, expands the scope of a claim to cover accused products differing only in minor or insubstantial ways. *Id.*

One of those limitations is that a doctrine of equivalents theory is improper when it will encompass or "ensnare" the prior art.  *See G. David Jang, M.D. v. Bos. Sci. Corp.*, 872 F.3d 1275, 1285 (Fed. Cir. 2017).  The patentee bears the burden to show that its doctrine of equivalents theory does not ensnare the prior art.  *Id*. at 1287.  A "[h]ypothetical claim analysis is a practical method to determine whether an equivalent would impermissibly ensnare the prior art." *Intendis GmbH v. Glenmark Pharm. Inc., USA*, 822 F.3d 1355, 1363–64 (Fed. Cir. 2016).  The hypothetical claim analysis is a two-step process that is often used by courts to determine ensnarement.  First, the patentee must "construct a hypothetical claim that literally covers the accused device," which involves expanding the claim limitations to encompass the features of the accused product.  *Jang*, 872 F.3d at 1285.  Second, "prior art introduced by the accused infringer is assessed to determine whether the patentee has carried its burden of persuading the court that the hypothetical claim is patentable over the prior art." *Id.*  "[W]hen using the hypothetical claim tool, that ***burden starts with proposing a proper hypothetical claim*** that only broadens the issued asserted claims." *Id*. (emphasis added).

The Federal Circuit has made clear that the hypothetical claim analysis is a question of law—making summary judgment, as here, an apt vehicle for early disposition.  *See DePuy Spine,*

6

*Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1322-23 (Fed. Cir. 2009); *see also Celotex*, 477 U.S. at 324-25. District courts have applied *Jang's* teachings in the summary judgment context. *See NLB Corp. v. PSI Pressure Sys. LLC*, Civil Action No. H-18-1090, 2019 U.S. Dist. LEXIS 197452, at *9-10 (S.D. Tex. Nov. 14, 2019) (defendant was entitled to summary judgment when the plaintiff patentee failed to submit a hypothetical claim for consideration). Relevantly, Judge Atlas held that "[w]hen the patentee fails to submit a proper hypothetical claim for consideration, the patentee has 'failed to meet his burden of proving that his doctrine of equivalents theory did not ensnare the prior art.'" *Id.* at 10 (quoting *Jang*, 872 F.3d at 1287).

## V.     ARGUMENT

The '684 Patent relates to Voice over IP (VoIP) systems. Ex. A ('684 Patent) at 1:6–8. Such systems are used to transmit voice conversations over a data network using the Internet Protocol (IP). *Id.* at 1:12–14. The patent explains that IP telephony systems are designed to share a network with data devices communicating with a network operating system. *Id.* at 2:7–10. Multimedia traffic can be adversely affected by jitter and latency, while data traffic is typically immune to these types of disruptions. *Id.* at 2:13–16.

According to the '684 Patent, to address the above problems, the IP telephony device monitors the amount of data being received over the network. When that amount falls below a predetermined threshold, the IP telephony device determines that condition and sends a signal (referred to in the claims as a "congestion message") to the multimedia server. *Id.* The server will then generate a congestion signal to send to all or selected IP telephony devices in the network. *Id.* The various telephony devices then throttle data being received by the IP telephony devices from their respective connected network devices. *Id.* at 13:17-43. The only embodiments described (and the embodiment claimed in, *inter alia*, Claim 47) requires that the IP telephony

device itself contain circuitry for throttling data.

**A.     Estech Cannot Identify Evidence that Would Permit a Jury to Find Infringement of Claim 47[c] of the '684 Patent**

Estech failed to provide any evidence to support its position that the accused telephony products contain throttling circuitry that generates a "congestion message."  Instead, Estech relies on "[c]onclusory allegations unsupported by concrete and particular facts," which will not prevent an award of summary judgment.  *See Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (citing *Liberty Lobby*, 477 U.S. at 247).



In Estech's Infringement Report, Mr. Occhiogrosso opines that ███████████████ ████████████████████████████████████████████████████ (Ex. D (Infringement Report) at Exhibit MITEL-684, 71).  He concludes that ███████████████ ████████████████████████████████████████████████████ *Id.*

Consistent with the plain claim language, Mr. Occhiogrosso agreed that ██████████ ███████████████████████████████ to satisfy claim element 47[c].  (Ex. E (Occhiogrosso Dep. Tr. (Rough)) at 30:11–20).  Mr. Occhiogrosso also confirmed that ███ ███████████████████████████ to satisfy the "congestion message" of claim element 47[c].  *Id.* at 53:14–25.

███████████████████████████████████████ However, Mr. Occhiogrosso's infringement opinion fails as a matter of law because he contends that ███ ██████████████ the "congestion message" of claim 47 without providing any evidence whatsoever that the accused products █████████████  While Mr. Occhiogrosso initially pointed to a table within a Mitel document to support his opinion, he agreed that ████████████████ ██████████  *Id.* at 35:9–36:25 (referencing MITEL-ESTECH_0091163, 0091174).  Both the relevant portions of the transcript and the table are reproduced below.



*Id.* at 35:9–36:25 (discussing MITEL-ESTECH_0091163, 0091174) (emphasis added).



(Ex. D (Infringement Report) at MITEL-684 at 72 (citing MITEL-ESTECH_0091163, 0091174)).

For a second time, Mr. Occhiogrosso was asked whether he had any evidence that Mitel ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ he responded that ▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (Ex. E (Occhiogrosso Dep. Tr. (Rough)) at 37:10–15).  After reviewing the document, Mr. Occhiogrosso could only point to one part of the document, stating that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *Id.* at 39:2–19 (emphasis added).  But, Mr. Occhiogrosso confirmed that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬ *Id.* at 40:14–21 (emphasis added).

For a third time, Mr. Occhiogrosso was asked whether he had any evidence that Mitel ▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ he responded that, ▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *Id.* at 41:8–12.

The only "evidence" that Mr. Occhiogrosso attempted to identify was a table ▬▬▬ and a footnote ▬▬▬▬▬▬▬▬▬▬▬▬▬▬

Estech is fully aware of its deficient position.  When questioning Mitel's expert, Mr. Bates,

██████████████        Estech intimated that it relies on ████████████████████████████████

As such, Estech's counsel intentionally avoided asking questions about ████████████████████

███████████, but Mr. Bates explained the glaring hole in Estech's theory:



(Ex. G (Bates Dep. Tr. (Rough)) at 28:8-25).

Even if Estech could satisfy the "congestion message" limitation of claim 47[c], Mr. Occhiogrosso failed to provide any evidence that the congestion message is sent when circuitry within the telephony device determines that "the amount of the information being received by the IP telephony device falls below a **predetermined level**."  Claim element 47[c] (emphasis added).

To satisfy the requirement for telephone device circuitry that determines whether a "predetermined level" is met, Mr. Occhiogrosso opined that ████████████████████████████████ ████████████████████████████████████████ (Ex. D (Infringement Report) at Ex. MITEL-684, 71); *see* (Ex. E (Occhiogrosso Dep. Tr. (Rough)) at 42:3–8 ███████████████ ████████████████████████████████████████████████████████ However, Mr. Occhiogrosso could not identify any evidence that ██████████████████ ██████████████████████, which would be required if ████████████████ play a role in

determining whether the predetermined threshold was met:



(Ex. E (Occhiogrosso Dep. Tr. (Rough)) at 44:18–45:25).

Mr. Occhiogrosso failed to provide sufficient evidence that ██████████████████

████████████████████████, as would be required by Claim 47 if he were correct that

████████████████████████████████

Beyond the flat failing of Estech's expert, Mitel documentation and Mitel's corporate

representative provide clear evidence that ████████████████████████████████

████████████████████████████████████████ (Ex. C (Chalmers

Dep. Tr.) at 58:10-59:1).  Indeed, when Mr. Occhiogrosso actually studied the evidence, he agreed

that ███████████████████████████████████



(Ex. E (Occhiogrosso Dep. Tr. (Rough)) at 43:24–44:17) (emphasis added).

And when pressed on where the prioritization he relied on occurred, Mr. Occhiogrosso

conceded that the evidence confirmed Mr. Chalmers' testimony that ████████████████





*Id.* at 47:2–48:8 (emphasis added).

The circuitry located in the network switches performing prioritization is also consistent with Mitel's corporate representative; Mr. Occhiogrosso had to concede as much:



*Id.* at 49:12–50:24 (emphasis added).

For the additional reason that Mr. Occhiogrosso cannot identify any circuitry within the telephony device that determines whether a predetermined threshold is met, summary judgment of non-infringement of claim 47 is warranted.

**B.      Estech Cannot Identify Evidence that Would Permit a Jury to Find Infringement of the '699 Patent**

Estech failed to provide any evidence to support its position that the accused telephony products are deployed in an infringing configuration.  The Asserted Claims of the '699 Patent require a specific LAN configuration, including "a first LAN" coupled to "a second LAN" over a WAN.  This LAN-WAN-LAN configuration is consistent with the plain (and undisputed) claim language.  As such, Mr. Occhiogrosso agreed that ███████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████

(Ex. E (Occhiogrosso Dep. Tr. (Rough)) at 57:19–59:4).

Although Mr. Occhiogrosso agrees that a LAN-WAN-LAN configuration is required for infringement, Estech does not present any evidence that would permit a reasonable jury to conclude that end users configure their devices in an infringing manner.  Mr. Occhiogrosso only cites to a Mitel products in the Infringement Report, stating that:



(Ex. D (Infringement Report) at 29).

Yet Mr. Occhiogrosso could not identify a single end user, much less identify if the configuration he concedes is needed for infringement is used.



(Ex. E (Occhiogrosso Dep. Tr. (Rough)) at 27:8–22).

16

*Id.* at 8:8–15.

Because Estech has no evidence whatsoever about customers using the configurations that Mr. Occhiogrosso concedes are necessary, summary judgment of non-infringement of the Asserted Claims of the '699 patent is warranted.

### C.    Ensnarement Under The Doctrine of Equivalents

Despite knowing that ensnarement was an issue from its past litigation, Estech did not provide any evidence or analysis to satisfy its burden to establish that its doctrine of equivalents theory does not improperly ensnare the prior art.  Estech instead provides rote recitations of the doctrine of equivalents and a short articulation of the "function-way-result" test, but fails to attempt to carry its burden with regard to the ensnarement issue *at all*.

Estech chose not to present any evidence related to ensnarement despite past ligation where this same issue was raised for the same claim element.  In *Estech Systems, Inc. versus Target Corp.*, Estech failed to provide any evidence on how its doctrine of equivalents theory for claim 1[i] did not improperly ensnare the prior art.  *See* No. 2:20-cv-00123-JRG-RSP, Dkt. No. 200, at 40-44 (E.D. Tex. April 30, 2021) (attached hereto as Ex. H).  Ultimately, the Court held that the defendant properly raised its ensnarement defense, but found it premature to rule on the issue at the summary judgment stage.  However, in light of Estech's repeated failure to provide any evidence against ensnarement, summary judgement in this case is even more appropriate.

Consistent with the purposes of Rule 56(c), Defendant's motion for summary judgment—seeking summary dismissal of Estech's doctrine of equivalent theory for failing to propose a hypothetical claim or otherwise address the notion of ensnarement at all—should be granted.

## VI.    CONCLUSION

Defendant's motions for summary judgment should be granted as described above.

Dated: May 26, 2023

Respectfully submitted,


/s/ Benjamin E. Weed

Benjamin E. Weed (*admitted pro hac vice*)
benjamin.weed@klgates.com
**K&L GATES LLP**
70 West Madison Street, Suite 3100
Chicago, IL 60602
Telephone: +1 312 372 1121
Facsimile: +1 312 827 8000

Melissa Smith (Texas Bar No. 24001351)
Gillam & Smith LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: +1 903 934 8450
Facsimile: +1 903 934 9257
melissa@gillamsmithlaw.com

*Attorneys for Defendants*

## <u>**CERTIFICATE OF SERVICE**</u>

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that all counsel of record who have appeared in this case are being served on this May 26, 2023 with a copy of the foregoing via the Court's CM/ECF system.

*/s/ Melissa R. Smith*
Melissa R. Smith