IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ESTECH SYSTEMS IP, LLC, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | CIVIL ACTION NO. 2:21-CV-00473-JRG-RSP |
| MITEL NETWORKS, INC., | § § | (LEAD CASE) |
| *Defendant.* | § § § | |

# MEMORANDUM ORDER

Before the Court are five motions to strike (**Dkt. Nos. 387, 388, 389, 390, 391**).[1] As an initial matter, Estech's *Daubert* Motion to Exclude Portions of the Expert Report and Proffered Testimony of Mitel's Expert Witness, Regis J. Bates, Jr. (**Dkt. No. 389**) and Estech's *Daubert* Motion to Exclude Portions of the Expert Report and Proffered Testimony of Defendant Mitel Networks Inc.'s Expert Witness, Dr. Walt Magnussen, Jr. (**Dkt. No. 390**) are **DENIED** as moot. *See* Joint Notice, Dkt. No. 403 at 1.

There are now three motions pending before the Court: (1) Mitel's Motion to Exclude Dr. Ramamirtham Sukumar (**Dkt. No. 387**); (2) Mitel's Motion to Exclude the Opinions of Damages Expert Justin R. Blok (**Dkt. No. 388**); and (3) Estech's *Daubert* Motion to Exclude Report and Testimony of Christopher Martinez (**Dkt. No. 391**). For the following reasons, the motions are **DENIED**.

---

[1] Citations to docket and page number correspond to those assigned by ECF.

I.   **BACKGROUND**

On December 30, 2021, Estech filed suit against Defendants[2] alleging infringement of U.S. Patent Nos. 7,068,684 (the "'684 Patent") and 7,123,699 (the "'699 Patent") (collectively, the "Asserted Patents").[3] The Asserted Patents relate to "information processing systems, and in particular, to the use of Voice over IP technology to transmit voice conversations." '699 Patent at 1:10–12; '684 Patent at 1:6–8. The '684 Patent is titled "Quality of Service in a Voice Over IP Telephone System," and the '699 Patent is titled "Voice Mail in a Voice Over IP Telephone System." '699 Patent at cover; '684 Patent at cover.

II.   **LAW**

In a suit for patent infringement, a successful plaintiff is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284. An assessment of the reasonable royalty generally involves opinions by expert witnesses.

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product

---

[2] The initial allegations included claims of infringement against additional defendants that are no longer in the case. *See e.g.*, Order Dismissing BMW, Dkt. No. 115; Order Dismissing Petco Defendants, Dkt. No. 163; Order Dismissing Charles Schwab Defendants, Dkt. No. 173; Order Dismissing SoFi Technologies, Dkt. No. 268; Order Dismissing Remaining SoFi Defendants, Dkt. No. 325; Order Dismissing Primoris Defendants, Dkt. No. 340; Order Dismissing Republic of Title and First American Financial, Dkt. No. 365; Order Granting Joint Motion to Stay and Notice of Settlement as to Abbott Labs, Fiserv Defendants, Marriott, and Randstad Defendants (Dkt. No. 382).

[3] Estech's initial complaint also asserted U.S. Patent Nos. 8,391,298 (the "'298 Patent") and 6,067,349 (the "'349 Patent"), and this set of consolidated cases has been stayed as to the '298 Patent and the '349 Patent because the PTAB has issued final written decisions invalidating all of the claims asserted in these cases. *See* Order, Dkt. No. 258 at 1–2.

of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702.

Rule 702 requires that judges act as gatekeepers to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). However, "[t]he inquiry envisioned by Rule 702 is ... a flexible one." *Id.* at 594; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) ("*Daubert* makes clear that the factors it mentions do *not* constitute a 'definitive checklist or test.'"). While the party offering the expert bears the burden of showing that the testimony is reliable, it "need not prove to the judge that the expert's testimony is correct...." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 1999) (citing *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)). Ultimately, "the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015) (citation omitted). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted).

### III.  MITEL'S MOTION TO EXCLUDE DR. RAMAMIRTHAM SUKUMAR (DKT. NO. 387)

#### A.  Background Facts

Estech hired Dr. Ramamirtham Sukumar as an expert witness to perform a conjoint analysis—a consumer research survey method—that is being used to "determine customers' willingness to pay for features represented in this patent infringement lawsuit." Sukumar Report, Dkt. No. 387-1 at ¶¶ 10, 12. Dr. Sukumar explains that conjoint analysis provides a way to

determine how much consumers value a particular feature of a multi-feature product. *Id.* at ¶¶ 13–15.

In his report, Dr. Sukumar uses conjoint analysis in an effort to quantify a difference in market value for a voice over IP (VoIP) solution/service based on seven attributes: five attributes corresponding to patented features, one distractor attribute, and one price attribute. *Id.* at ¶¶ 10, 12. Using information obtained from the survey, Dr. Sukumar calculates numerical values representing consumer willingness to pay for each of the five attributes corresponding to the patented features. *Id.* at ¶¶ 50–52.

Defendants seek to exclude Dr. Sukumar's entire expert report and opinions concerning the conjoint survey as allegedly failing to satisfy the reliability requirements of Rule 702 and *Daubert*. Motion, Dkt. No. 387 at 1. For the reasons below, the Court holds that Dr. Sukumar's expert report is sufficiently reliable to satisfy Rule 702 and *Daubert*.

### B. Analysis

Mitel argues that the conjoint survey is unreliable because (1) it uses responses from customers rather than providers, such as Mitel, and therefore measures the incorrect universe of respondents, and (2) does not sufficiently relate to any fact issues the jury will be asked to resolve. Motion, Dkt. No. 387 at 5. As a legal basis for its first argument, Mitel relies on several cases. Motion, Dkt. No. 387 (citing *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 264 (5th Cir. 1980) ("the persons interviewed must adequately represent the opinions which are relevant to the litigation."); *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 487–88 (5th Cir. 2004); *TravelPass Grp., LLC v. Ceasers Ent. Corp.*, No. 5:18-cv-153-RWS-CMC, 2021 WL 6334670, at *8 (E.D. Tex. Sept. 29, 2021); *Fractus, S.A. v. Samsung*. 6:09-CV-203-LED-JDL, 2011 WL 7563820, at *1 (E.D. Tex. Apr. 29, 2011) (granting motion to exclude customer surveys attributing a certain dollar value and identifying importance of percentage of cell phones with internal as opposed to

4

external antennas because "the surveys do not measure how consumers value the purported advantages provided by Plaintiff's technology.")). According to Mitel, the appropriate remedy is to exclude Dr. Sukumar's opinions entirely. *Id.* at 1, 13.

First, Mitel is a service provider rather than a customer, and the survey includes customer responses. Mitel recognizes the relevant inquiry is whether the persons interviewed *adequately represent* the opinions that are relevant to the litigation. *Amstar*, 615 F.2d at 264 (emphasis added). The opinions relevant to this litigation are those attempting to quantify the relative importance of different features covered by the Asserted Patents. While Mitel describes customers as an "irrelevant population of respondents," input from customers about the offered products and services is relevant, and would likely be beneficial, to a service provider. The nexus between the importance of features to purchasers and providers of products and services is sufficient to find that the survey responses from customers adequately represent the opinions relevant to this litigation.

Second, the attributes identified by Dr. Sukumar are similar to those discussed in the '684 and '699 Patents, and therefore measure how consumers value purported advantages offered by Estech's technology. *See* Dr. Sukumar's Report, Dkt. No. 387-1 at ¶¶ 10, 12; Dr. Sukumar Feature & Level Description, Dkt. No. 387-6 at 10 (identifying eight sub-features within the three survey attributes correlated to the Asserted Patents); *see also* '684 Patent at 12:24–44 and 14:30–46 (describing advantage of the '684 Patent invention as it relates to voice data transmission); '699 Patent at 10:9–31 (describing advantages of the '699 Patent invention). The methodology need only be *sufficiently* tied to the facts of the case. *Summit 6*, 802 F.3d 1283 at 1296 ("while all approximations involve some degree of uncertainty, the admissibility inquiry centers on whether the methodology employed is reliable. A distinct but integral part of that inquiry is whether the

data utilized in the methodology is sufficiently tied to the facts of the case.") (citations omitted). Dr. Sukumar has sufficiently tied the features of the Asserted Patents to the features analyzed in his study. Therefore, Dr. Sukumar's report is sufficiently reliable and relevant to factual issues in this case the jury will be asked to resolve. *Daubert v.* 509 U.S. at 597. Further, Rule 403 does not warrant exclusion. FED. R. EVID. 403.

There may be questions regarding the correctness of Dr. Sukumar's methodology and the results from his conjoint study, but assessments as to credibility and correctness are for the factfinder, not the Court. *Summit 6*, 802 F.3d at 1296 ("But where the methodology is reasonable and its data or evidence are sufficiently tied to the facts of the case, the gatekeeping role of the court is satisfied, and the inquiry on the correctness of the methodology and of the results produced thereunder belongs to the factfinder.") The inquiry on the correctness of the methodology and the results produced in Dr. Sukumar's report can be properly explored through vigorous cross-examination and presentation of contrary evidence. *Daubert*, 509 U.S. at 596.

### C. Conclusion

For the reasons above, Mitel's Motion to Exclude Motion to Exclude Dr. Ramamirtham Sukumar (Dkt. No. 387) is hereby **DENIED**.

### IV. MITEL'S MOTION TO EXCLUDE THE OPINIONS OF DAMAGES EXPERT JUSTIN R. BLOK (DKT. NO. 388)

### A. Background Facts

Estech hired Justin R. Blok as its damages expert. In his report, Mr. Blok analyzes a license ("Customer License") between Estech and a Mitel customer and concludes that it is "the most probative evidence as to the royalty structure and amount" Estech and Mitel would have agreed to for rights to the Asserted Patents at the time of the hypothetical negotiation. Motion, Dkt. No. 388

at 3–4 (citing Blok Report, Dkt. No. 388-1 at ¶ 111). Notably, the Customer License also concerned the Asserted Patents.

Using information from that license agreement, Mr. Blok determines an effective royalty rate for this case. He multiplies the total license fee by an inflation factor and then divides the result by the number of infringing VoIP lines or devices to arrive at an effective royalty rate of $65.26 per Mitel VoIP line or device. Motion, Dkt. No. 388 at 3–4 (citing Blok Report, Dkt. No. 388-1 at ¶ 111). Using the effective royalty rate, Mr. Blok allocates the value to each of the Asserted Patents based on Dr. Sukumar's conjoint survey to arrive at a royalty rate of $24.22 per Accused Instrumentality accused of infringing the '684 Patent and $34.98 per Accused Instrumentality accused of infringing the '699 Patent. *Id.* at 4 (citing Blok Report, Dkt. No. 388-1 at ¶ 204). Finally, Mr. Blok multiplies the royalty rate for each patent by the respective number of Accused Instrumentalities to arrive at the reasonable royalty.

Mitel seeks to exclude Mr. Blok's damages opinions as allegedly failing to satisfy the reliability requirements of Rule 702 and *Daubert*. Motion, Dkt. No. 388 at 3. For the reasons below, the Court holds that Mr. Blok's opinions satisfy the reliability standards of Rule 702 and *Daubert*.

### B. Analysis

Mitel argues that Mr. Blok's opinions are unreliable because of his methodology. Motion, Dkt. No. 388 at 4; Reply, Dkt. No. 414 at 2. According to Mitel, Mr. Blok first artificially inflates the royalty rate by dividing the license fee only by the number of VoIP lines designated as in service. Motion, Dkt. No. 388 at 4 (citing Previous Blok Report, Dkt. No. 388-2 at 3 n.1). Mitel contends that Mr. Blok then multiplies that artificially high rate by the number of Mitel products sold that allegedly infringe. *Id.*

The Court is not persuaded. The hypothetical negotiation analysis inherently involves approximation and uncertainty. *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 76 (Fed. Cir. 2012). Mr. Blok explains why, in his opinion, the Customer License he relies upon is the best proxy to calculate the reasonable royalty in this case. Blok Report, Dkt. No. 409-2 at ¶¶ 99–110, 123–126; Blok Supp. Report, Dkt. No. 409-3 at ¶ 15; Blok Dep. Tr., Dkt. No. 409-4 at 135:14–136:5. He also explains dissimilarities between other agreements and the facts here. Blok Report, Dkt. No. 409-2 at ¶¶ 123–125. Mitel's own damages expert, Christopher A. Martinez, acknowledges that the Customer License is comparable and can be properly used to estimate the reasonable royalty. *See* Dkt. No. 409-5 at ¶ 117.

Mr. Blok's methodology is not automatically unreliable because he calculates a royalty rate based on the number of infringing devices rather than the number of infringing *uses*. Analyzing the Customer License data in terms of the number of infringing devices rather than infringing uses allows for calculating a reasonable royalty for accused devices sold by Mitel—a service provider. Finally, in contrast to Mitel's assertions that the device count from the Customer License is a mere snapshot, the number of infringing devices included all those used during the relevant damages time period. Sur-reply, Dkt. No. 420 at 3 (citing Previous Interrogatory Responses, Dkt. No. 420-2 at 3; Previous Blok Report, Dkt. No. 420-3 at ¶ 113, n. 198). In sum, the Court finds that Mr. Blok's methodology is sufficiently tied to the facts of the case. *Summit 6*, 802 F.3d 1283 at 1296.

The correctness of Mr. Blok's methodology and his results can best be explored through vigorous cross-examination and the presentation of contrary evidence. *Daubert*, 509 U.S. at 596.

### C. Conclusion

For the reasons above, Mitel's Motion to Exclude the Opinions of Damages Expert Justin R. Blok (Dkt. No. 388) is hereby **DENIED**.

### V. ESTECH'S *DAUBERT* MOTION TO EXCLUDE THE REPORT AND TESTIMONY OF CHRISTOPHER MARTINEZ (DKT. NO. 391)

#### A. Background Facts

Mitel hired Christopher A. Martinez as its damages expert. Mr. Martinez opines that the proper measure of damages in this matter is a reasonable royalty. As part of his analysis, he considers 14 different agreements—12 involve VoIP service customers ("Customer Agreements") and two involve VoIP service providers, including Cisco and Microsoft ("Provider Agreements"). Mr. Martinez determines that the Provider Agreements are the most analogous, and then he compares the agreements with unified communications market revenue data from Cisco, Microsoft, and Mitel to arrive at a reasonable royalty. Motion, Dkt. No. 391 (citing Martinez Report, Dkt. No. 391-2 at ¶¶ 219–223, 254 n. 401, Schedules 4.0–6.0).

Estech seeks to exclude Mr. Martinez's damages opinions on two grounds: (1) for allegedly failing to satisfy the reliability requirements of Rule 702 and *Daubert*; and (2) for relying on the revenue data that violates the Court's Standing Order on Motions in Limine No. 3. Motion, Dkt. No. 391 at 1–2. The Court holds that Mr. Martinez's opinions satisfy the reliability requirements of Rule 702 and *Daubert*, and the Court's MIL No. 3 does not preclude the revenue data.

#### B. Analysis

As an initial matter, Court MIL No. 3 is not a proper basis to challenge Mr. Martinez's opinions. Court MIL No. 3 states: "[t]he parties shall be precluded from introducing evidence, testimony, or argument concerning any party's overall financial size, wealth, or executive compensation." Cisco and Mitel are not parties to this suit. Additionally, the revenue data at issue concerns the unified communications market over a 12-year window and does not mention overall financial size.

9

Estech's challenge as to the reliability of Mr. Martinez's opinions also falls short. Estech argues that Mr. Martinez's opinions are based on a spreadsheet created by a third-party vendor that is not authenticated in the record, lacks sufficient detail about the nature or relevance of the revenue information and how it was calculated, and fails to provide how the revenue data is sufficiently tied to the accused technology. Motion, Dkt. No. 391 at 3.

Here, the issue is whether Mr. Martinez's opinions satisfy the reliability standards of Rule 702 and *Daubert*, and not whether the underlying information has been properly authenticated. As far as reliability, Estech acknowledges some details about the unified communication revenue data, *see id.* at 4 (citing MITEL-ESTECH_0346073), without recognizing all of the available details. *See* MITEL-ESTECH_0344587, Dkt. No. 405-1 (providing details and definitions of each specific product category listed); *see also* MITEL-ESTECH_0346073. Mr. Martinez's inclusion of products may encompass more than what is accused in this case, but the Provider Agreements he analyzes also cover a wider array of technology. To bridge that gap, he analyzes the reasonable royalty in different scenarios, each of which includes different sets of product revenues. *See* Martinez Report, Dkt. No. 418-2 at ¶¶ 119–123. In sum, Mr. Martinez's approximations involve some degree of uncertainty; however, his methodology is sufficiently reliable, and the data utilized in his analysis is sufficiently tied to the facts of this case. *Summit 6*, 802 F.3d 1283 at 1296.

The correctness of Mr. Martinez's opinions and the underlying information on which he relies can best be properly explored through vigorous cross-examination and the presentation of contrary evidence. *Daubert*, 509 U.S. at 596.

**Conclusion**

For the reasons above, Estech's Daubert Motion to Exclude the Report and Testimony of Christopher Martinez (Dkt. No. 391) is hereby **DENIED.**

**SIGNED this 18th day of July, 2023.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE